FILED

06/20/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0673

DA 16-0673

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 150N

IN THE MATTER OF THE ESTATE OF

CLEO M. BEALS,

Deceased.

APPEAL FROM:     District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DP 2008-18
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Thomas E. Towe, Towe, Ball, Mackey, Sommerfeld & Turner, PLLP,
Billings, Montana

For Appellee:

Brandon JT Hoskins, Moulton Bellingham PC, Billings, Montana

Submitted on Briefs:   May 17, 2017

Decided:   June 20, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Byron "Bus" Beals and Bonny Rieckmann appeal two orders from the Sixteenth Judicial District Court: one from October 2016 denying their request for a hearing, dismissing their objections, and accepting a final accounting in the Estate of their mother; and one from June 2014 striking their expert witness report and quashing their request for production of documents. We affirm.

¶3      W.E. "Dude" Beals died in 1994. His wife, Cleo Beals, and their three children, Bob Beals, Bus, and Bonny, survived him. Dude's will left all of his property to Cleo, with the remainder upon her death to be distributed equally among the three children. Much of Dude's property, however, passed outside of his will to Cleo and the children through non-testamentary transfers, such as life insurance policies and property placed in joint tenancy.

¶4      Cleo died in 2007. Her will was submitted to probate, and the District Court appointed her son Bob as personal representative. Cleo's will provided that her property pass to her three children equally. Bob submitted an accounting of the Estate. In response, Bus and Bonny alleged that Bob had failed to include several accounts, including various funds and life insurance policies, that Dude had passed to Bob through non-testamentary transfers.

2

¶5      The case proceeded to a bench trial in May 2012. Prior to trial, Bus and Bonny petitioned the court to order Bob to place the accounts and their "reasonably expected earnings" from "the date they were removed from Cleo" into the inventory of the Estate. At trial, Bus and Bonny presented expert witness testimony estimating the present value of the accounts, taking into consideration the "expected earnings." Bus and Bonny also asked the court to order Bob to include in the Estate inventory the accounts "or their proceeds."

¶6      Presiding District Judge Hegel issued an Order in December 2012 (Hegel Order) placing seven accounts into a constructive trust, "subject to equal distribution among the three Beals children." The Hegel Order identified each account by name and included its monetary value at or near the time of Dude's death. The Order stated that the seven accounts "or their values, together with interest at the rate of 10% per annum from Cleo's date of death until paid, are payable into the above-entitled estate for distribution and shall constitute an equitable set-off against any distribution to Bob." Bob appealed the Hegel Order, and we affirmed. *In re Estate of Beals*, 2013 MT 290N, No. DA 13-0088, 2013 Mont. LEXIS 410 (hereafter *Beals I*).

¶7      In December 2013, following remand, Bob filed a Supplemental Accounting of the Estate that included the amounts of the seven accounts as stated in the Hegel Order plus interest at ten percent per year from the time of Cleo's death—a period of 2,300 days. Bob provided a "set-off" of his 1/3 share of the Estate and agreed to pay $3,927.19 into the Estate to fulfill the requirements of the constructive trust.

¶8      Bus and Bonny then sought production of documents relating to the seven accounts. They submitted an expert witness report estimating the likely increases in value of the

seven accounts between the time of Dude's death and the time of Cleo's death. Then-presiding District Judge Huss quashed the request for production of documents and struck the expert report in June 2014 (Huss Order). He noted that the Hegel Order had clearly rejected Bus's and Bonny's argument that they were entitled to the "reasonably expected earnings" on the accounts from the time of Dude's death. Judge Huss determined that the Hegel Order's conclusions were "res judicata in this matter" and were "not subject to further determination or alteration."

¶9    Bob filed a "2nd Supplemental/Final Accounting" in May 2016. Bus and Bonny objected on the grounds that Bob had failed to pay all the interest on the accounts as required by the Hegel Order, that he had violated his fiduciary duty by failing to invest the funds in an interest-bearing account after filing his December 2013 Supplemental Accounting, and that the Huss Order erroneously interpreted the Hegel Order as not requiring "the inclusion of an increase in value" of the seven accounts between the time of Dude's death and Cleo's death.

¶10    The District Court, with Judge Hayworth now presiding, dismissed Bus's and Bonny's objections and accepted the final accounting in October 2016 (Hayworth Order). The court reasoned that Bus and Bonny had waived their objection regarding the unpaid interest on the accounts and that Bob had acted reasonably in holding the Estate in a low-interest-bearing checking account, thereby complying with his fiduciary duty. The Estate was partially distributed under the terms of the final accounting. Bus and Bonny appeal the Huss and Hayworth Orders.

4

¶11    We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re Estate of McDermott*, 2002 MT 164, ¶ 22, 310 Mont. 435, 51 P.3d 486. Bus and Bonny make two arguments on appeal. The first is that Judge Huss erred in his Order by declining to determine the values of the seven accounts at the time of Cleo's death in 2007. They assert that the Hegel Order listed the monetary values of the seven accounts in order to identify the funds, not to declare the amount for each that Bob owed to the Estate. They argue that the intent of that Order was that the values of the accounts be calculated as of the time of Cleo's death, not at the time of Dude's death.

¶12    "Under the doctrine of law of the case, a legal decision made at one stage of litigation which is not appealed when the opportunity to do so exists, becomes the law of the case for the future course of that litigation and the party that does not appeal is deemed to have waived the right to attack that decision at future points in the same litigation." *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352. The Hegel Order included monetary values of each of the seven accounts consistent with the values of those accounts at or near the time of Dude's death. It placed those seven accounts "or their values" into a constructive trust. Bus and Bonny had urged the court to include the accounts and their "reasonably expected earnings" or "proceeds" in the constructive trust, but the court declined to do so. The language of the Hegel Order indicates that the court intended to include the actual accounts in the constructive trust or, in the event that they no longer existed, the monetary values of those accounts at the time of Dude's death.

¶13 The Hegel Order expressly did not grant relief in the terms Bus and Bonny requested. This Court affirmed that order on appeal, and Bus and Bonny did not raise these issues in that appeal. *Beals I*, ¶¶ 13-14. The Hegel Order is the "law of the case" and is therefore binding on the parties. *McCormick*, ¶ 38. The Huss Order's application of its provisions was not error.

¶14 Bus's and Bonny's second argument on appeal is that Judge Hayworth erred in determining that Bob had fulfilled his interest obligations under the Hegel Order and that he did not violate his fiduciary duties in managing the Estate. Bus and Bonny reason that the Hegel Order provided for the accrual of interest on the accounts "until paid," which they interpret as the point at which they received their distributions from the Estate in late 2016. Because Bob paid interest on the accounts only through December 2013, they contend that he failed to comply with the Hegel Order. They assert also that Bob breached his fiduciary obligation by unreasonably holding the Estate funds—a total of $662,663.20—in a checking account from the time of his Supplemental Accounting in 2013 until disbursement in 2016, rather than investing them in a higher-interest-bearing account.

¶15 The Hegel Order provided that the values of the seven accounts, "together with interest at the rate of 10% per annum from Cleo's date of death *until paid, are payable into the above-entitled estate* for distribution." (Emphasis added.) Bob made the requisite payments "into the . . . estate" in December 2013. These payments included all interest accrued "from Cleo's date of death" until that time. According to the plain language of the

Hegel Order, Bob satisfied his interest obligations in December 2013, thereby ending the accrual of interest. The Hayworth Order correctly determined this.

¶16 Montana law placed Bob under a fiduciary duty to "invest and manage" the Estate "as a prudent investor would" and to "exercise reasonable care, skill, and caution." Sections 72-3-610, -38-902(1), MCA. After Bob attempted to close and distribute the Estate in December 2013, Bus and Bonny continued the litigation by filing objections. When Judge Huss entered his Order in June 2014 denying Bus's and Bonny's requests regarding the valuation of the seven accounts, Bus and Bonny filed a motion to reconsider. Bob's failure to anticipate that this litigation would last for three more years after our remand in *Beals I* and his December 2013 Supplemental Accounting was not unreasonable. He acted prudently in placing the Estate funds in a checking account where they could be readily distributed rather than in a longer-term, higher-interest-bearing investment. Judge Hayworth correctly determined that Bob did not violate his fiduciary duty.

¶17 Bus and Bonny also argue briefly that Bob should have made a partial distribution of the Estate after his December 2013 Supplemental Accounting in order to avoid liability for interest after that time. Montana law provides that a personal representative "may" propose a partial distribution of an estate. Section 72-3-903(1), MCA. The statute did not require Bob to make such a distribution, and the record shows that Bus and Bonny did not request such a distribution until after Judge Hayworth's Order. We thus find this argument to be without merit.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for noncitable memorandum opinions. This

7

appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Judge Huss's and Judge Hayworth's orders are affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT